Christopher A. Seeger (*pro hac vice* forthcoming)
SEEGER WEISS LLP
55 Challenger Road, Suite 600
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Facsimile: (973) 639-9393
Email: cseeger@seegerweiss.com

Shauna Itri (SBN 345536)
SEEGER WEISS LLP
325 Chestnut St., Suite 917
Philadelphia, PA 19106
Telephone: (215) 564-2300
Facsimile: (215) 851-8029
Email: sitri@seegerweiss.com

*Counsel for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>      *Plaintiff,*<br><br>v.<br><br>TEA DATNG ADVICE, INC.,<br><br>      *Defendant.* | Case No.<br><br>**PROPOSED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jane Doe, individually and on behalf of all others similarly situated, brings this class action against Defendant Tea Dating Advice, Inc. ("Tea" or "Defendant"), and based on personal knowledge, information and belief, and the investigation of counsel, alleges as follows:

### INTRODUCTION

1.     Tea Dating Advice, Inc. is a San Francisco-based company founded by Sean Cook in 2022 (launched publicly in 2023). Cook, a software engineer, created the app after witnessing his mother's "terrifying experiences" with online dating, including being catfished and unknowingly dating

men with criminal records.[1]  Cook, allegedly, leveraged his expertise building innovative technology to develop a "first-ever dating safety platform for women" to protect women.[2]

2.      As described by Cook, Tea is a mobile application designed as a "women-only" platform that allows women to perform background checks on men they are dating or interested in. The application provides crowdsourced information about potential male dates to ensure women's safety when meeting new love interests.

3.      When a user installs the application in order to verify their identification, the user is required to submit a photo of herself or "selfie", along with a government-issued photo identification (typically driver's licenses) with full names and addresses.

4.      The Tea application has a variety of communication features.  Tea has a direct messaging system that allows users to communicate privately with each other.  The messages typically contain highly sensitive discussions including conversations about abortions, cheating partners, phone numbers, meeting locations, warnings about abusive partners, and other intimate personal information.

5.      Tea also had a group chat function, allowing users to communicate as a group via the application.  The feature, "Tea Party Group Chat," allows women to directly share information about and their experiences with the men. The group chat also has a ratings function, allowing the users to award a "red flag" or a "green flag."

6.      As stated in its privacy policy examined below, Tea collects and stores these vast amounts of sensitive personally identifiable information ("PII"), like government-issued identification cards or drivers licenses, addresses, emails, names, biometric data (photos or selfies), date of birth,

---

[1] *See* "Spilling the Tean on Tea," *available at* https://www.teaforwomen.com/about (last visited August 7, 2025).
[2] *Id*.

2
CLASS ACTION COMPLAINT

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

intimate communications, location data,[3] and protected health information ("PHI"), like reproductive healthcare services (collectively, "Private Information") belonging to tens of thousands of women affiliated with Tea's customers (collectively, "Class members").

7.    Tea affirmatively promises to safeguard the Private Information it collects and stores.[4] In providing Defendant with sensitive Private Information, Plaintiff and Class members relied on that promise. Further, under the common law, numerous federal and state laws, and contracts with customers, Tea owed Plaintiff and Class members a non-delegable duty to implement adequate cybersecurity systems necessary to keep their Private Information confidential, secure, and protected from unauthorized disclosure or access.

8.    Instead, Tea repeatedly and systematically failed to implement reasonable, industry-standard data security practices, maintaining the Private Information under its control in a negligent and/or reckless manner. In fact, unbeknownst to its customers or to tens of thousands of end users like Plaintiff and Class members, Tea failed to implement even the most basic online security protocols, including multi-factor authentication, adequate data encryption, password protection, or access controls.[5]

9.    Tea's cybersecurity failures resulted in a data breach. On July 25, 2025, Tea announced that cybercriminals deliberately accessed Tea's vulnerable systems and intentionally exfiltrated valuable, private, and sensitive Private Information belonging to Plaintiff and Class members (the "Data Breach" or the "Breach"). It was reported that 72,000 images total, including 13,000 verification photos and government IDs, plus 59,000 images from posts, comments, and direct messages were

---

[3] See Privacy Policy, TEA https://www.teaforwomen.com/privacy (last visited August 7, 2025).
[4] See Privacy Policy, TEA https://www.teaforwomen.com/privacy (last visited August 7, 2025).
[5] See Nirali Sheth, Is the Tea app legal and who is the founder? Entire data breach controversy explained, (JULY 26, 2025), https://www.primetimer.com/features/tea-app-legal-founder-entire-data-breach-controversy-explained (last visited August 7, 2025).

CLASS ACTION COMPLAINT

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

taken. This amounted to over 59 GB of data stored unencrypted on an unsecured Firebase storage bucket. Then days later, Tea announced that 1.1 million private messages spanning from early 2023 to just before discovery were also stolen. These messages reportedly contained "deeply personal exchanges, including warnings about abusive partners, confessions of infidelity, and sensitive health disclosures".

10.    The Data Breach was a direct and foreseeable result of Tea's failure to implement adequate cybersecurity procedures and protocols.

11.    As a result of the Data Breach, Plaintiff and Class members have suffered concrete injuries in fact including: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their Private Information, which: (a) remains inadequately secured and vulnerable to unauthorized access and abuse; and (b) remains in Tea's possession and is subject to further unauthorized disclosures so long as Tea fails to undertake appropriate and adequate measures to protect the Private Information.

12.    Plaintiff initiates this class action lawsuit on behalf of all those similarly situated to address Tea's inadequate safeguarding of Class members' Private Information, which Tea collected and maintained.

13.    Further, Plaintiff and Class members have a continuing interest in ensuring their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

CLASS ACTION COMPLAINT

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

# PARTIES

**Plaintiff**

14.     Plaintiff Jane Doe has been a customer of the Tea app from 2024 to the date of the filing of this Complaint.

15.     As required to obtain services from Tea, Plaintiff provided Tea with highly sensitive Private Information. Tea then possessed and controlled that information.

16.     The Plaintiff sent and received direct messages and posted sensitive information on the feed.

17.     At all relevant times, Jane Doe has been domiciled in the state of California.

18.     Plaintiff is a victim of the Data Breach.

19.     Private Information belonging to Plaintiff was stored with Tea because Plaintiff was a customer.

20.     As a result, Private Information belonging to Plaintiff was among the data accessed by an unauthorized third party in the Data Breach.

21.     At all times herein relevant, Plaintiff is a member of the Class.

22.     Plaintiff also received an electronic notification of the Data Breach when logging into their Tea account.

23.     Plaintiff was unaware of the Data Breach before receiving these notifications.

24.     As a result, Plaintiff was injured in the form of lost time dealing with the consequences of the Data Breach, which included and continues to include: time spent verifying the legitimacy and impact of the Data Breach; time spent self-monitoring their accounts with heightened scrutiny; and time spent seeking legal counsel regarding their options for remedying and/or mitigating the effects of the Data Breach.

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

25.    Plaintiff is also injured by the material risk to future harm they suffer based on Tea's breach; this risk is imminent and substantial because Plaintiff' data has been exposed in the breach, the data involved is highly sensitive and presents a high risk of identity theft or fraud; and it is likely that some of the Class's information that has been exposed has already been misused.

26.    Plaintiff has also suffered actual injury in the form of damages to and diminution in the value of their Private Information—a condition of intangible property that they entrusted to Tea, which was compromised in and as a result of the Data Breach.

27.    Plaintiff, as a result of the Data Breach, has increased anxiety for their loss of privacy and anxiety over the impact of cybercriminals accessing, using, and selling their Private Information.

28.    Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their Private Information, in combination with their name, being placed in the hands of unauthorized third parties/criminals.

29.    Plaintiff has a continuing interest in ensuring that their Private Information, which, upon information and belief, remains backed up in Tea's possession, is protected and safeguarded from future breaches.

**Defendants**

30.    Defendant Tea Dating Advice, Inc. is a corporation organized under the state laws of Delaware with its principal place of business located San Francisco, California.

**JURISDICTION AND VENUE**

31.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because this is a class action involving more than 100 class members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one member of the class is a citizen of a state different from Tea.

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

32.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

33.     This Court has personal jurisdiction over Tea because it conducts substantial business in this District, has purposefully availed itself of the benefits and privileges of conducting business in this District, and has caused harm to Plaintiff and Class members as a direct result of actions they take in this District.

34.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is headquartered in San Francisco, and because a substantial portion of the acts and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

## COMMON FACTUAL ALLEGATIONS

**Tea**

35.     Tea Dating is the operator of the "Tea" mobile app, a dating platform targeting women who wish to review and research potential dates. It proclaims to be a resource for women to protect themselves while dating.

36.     The app enables its users to upload, view, and comment on photos of men, check men's public records, and perform image searches. It also provides the ability to rate and review men, as well as a group chat function. [6]

37.     The app uses artificial intelligence to verify that the user is a woman through facial analysis and other personal information to preserve the app as a women-only space.

---

[6] *See* Williams, Elliot (July 25, 2025). "*Is this even legal? Answers to every question about the Tea app drama*,*. CNN, *available at*: https://www.cnn.com/2025/07/25/us/tea-app-dating-privacy-cec (last visited August 7, 2025).

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

38.    Users are required to submit their photo and an ID to access the application. According to the company, users remain anonymous, and the requirement to upload an ID was removed in 2023.[7]

39.    Recently, Tea's app skyrocketed to the top of Apple's app store after garnering widespread attention on social media.

40.    Indeed, Tea states, "With over 240,000 followers on Instagram and 190,000 on TikTok, Tea's content reaches millions each month- fueling real conversations, empowering women to protect themselves, and building one of the most engaged women-led communities on the internet."[8]

41.    Tea proclaims it "has helped over 5,700,000 women make safer dating decisions which has propelled Tea to as high as #1 on the app store. Tea has an app rating of 4.8 out of 5 across over 70,000 ratings on app stores making it the highest rated app in the dating category."[9]

42.    Tea operates on a freemium subscription model:

    a.    Free Tier: Basic app functionality is available for free, including community discussions and basic features.

    b.    Premium Subscription: The paid version costs $14.99 per month and includes advanced safety tools such as AI-powered reverse image search, background checks, criminal record searches, and court document searches.[10]

---

[7] *See* Shoshana Weissmann (July 25, 2025), *Top app spills Tea—and user verification IDs,* available at: https://www.rstreet.org/commentary/the-top-app-spills-tea-and-user-verification-ids/ (last visited August 7, 2025).

[8] TEA, *available at:* https://www.teaforwomen.com/about (last visited August 7, 2025).

[9] *Id.*

[10] Rachel Kline (May 6, 2025), *Sean Cook Of Tea On 5 Things You Need To Know To Create a Highly Successful App, available at*: https://medium.com/authority-magazine/sean-cook-of-tea-on-5-things-you-need-to-know-to-create-a-highly-successful-app-bc2f2ac6a131 (last visited August 7, 2025).

CLASS ACTION COMPLAINT

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

43. Founder Cook states in an interview regarding the fee charged: "If we could, we would make the app completely free, but we need to pay the data providers that help our users run the safety checks."[11]

44. The company states it donates 10% of its profits to the National Domestic Violence Hotline.[12]

45. In providing its services, Tea collects, processes, stores, and uses for its own commercial benefit massive amounts of Private Information belonging to tens of thousands of women.

46. As a condition of receiving services from Tea, Plaintiff and Class members were obliged to entrust the company with their highly sensitive Private Information. And indeed, between 2023 and early 2024, users uploaded this data with the understanding that Tea would protect it using modern data security practices.

47. This Private Information was highly sensitive and, upon information and belief, included some or all of the following for both current and past Tea users:

    a. Names

    b. Dates of birth

    c. Mailing and email addresses

    d. Phone numbers

    e. Photo identification (drivers licenses and other government -issued IDs)

    f. Medical information

    g. Intimate communications

    h. Photos

---

[11] *Id.*
[12] *Id.*

9
CLASS ACTION COMPLAINT

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

i.   Biometric data

48.     This sort of Private Information is extremely sensitive.

49.     This Private Information is also highly valuable to criminals because it can be used to commit identity theft and medical theft crimes.

50.     Because of the highly sensitive and personal nature of the information about Plaintiff and Class members that Tea collects, processes, and stores, Tea is obligated to, among other things: keep Private Information private; comply with data security standards applicable within the industry, including FTC guidelines; and comply with all applicable federal and state laws protecting consumer Private Information.

51.     Defendant received the Private Information of Plaintiff and Class Members in exchange for services offered by Defendant.

52.     The information held by Defendant in its computer systems at the time of the Data Breach included the unencrypted Private Information of Plaintiff and Class Members, including but not limited to their names, date of birth, driver's license numbers, and government issued identification cards.

53.     Upon information and belief, Defendant made promises and representations to Plaintiff and Class Members, that the Private Information collected from them as a condition of receiving services would be kept safe, confidential, that the privacy of that information would be maintained, and that Defendant would delete any sensitive information after it was no longer required to maintain it.

54.     Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and on the mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

55.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class Members relied on the sophistication of Defendant to keep their Private Information confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

56.     Defendant derived a substantial economic benefit from collecting Plaintiff's and Class Members' Private Information. Without the required submission of Private Information, Defendant could not perform the services it provides.

57.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

**Tea's Privacy Policies and Practices**

58.     Tea's website contains a "Terms of Use" which states: "All personal data that you provide to us in connection with your use of the Services is collected, stored, used, and disclosed by the Company in accordance with our Privacy Policy. In addition, in common with most websites, we use cookies, location data, and other user information to help us understand how people are using the Services, so that we can continue to improve the service we offer. The Privacy Policy, as may be updated by the Company from time to time in accordance with its terms, is hereby incorporated into

11
CLASS ACTION COMPLAINT

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

these Terms of Use, and you hereby agree to the collection, use and disclose practices set forth therein."[13]

59.    Consistent with this ethos, Tea's Global Privacy Statement states, "respects your privacy and is committed to protecting it through our compliance with this policy." And Tea promises its customers and end users: "The security of your Personal Information is important to us. When you enter sensitive information (such as credit card number) on our Services, we encrypt that information using secure socket layer technology (SSL).Tea Dating Advice takes reasonable security measures to protect your Personal Information to prevent loss, misuse, unauthorized access, disclosure, alteration, and destruction."[14]

60.    Tea continues to promise, "During the registration process, users are required to submit a selfie photo for verification purposes. This photo is securely processed and stored only temporarily and will be deleted immediately following the completion of the verification process. Furthermore, while our app utilizes Face ID for secure authentication, all Face ID biometric data is processed and stored locally on the user's device within the Secure Enclave, and is never transmitted to or stored by our servers."[15]

61.    Tea states it collects the following information: "When you use or register with the Services, we may ask you to provide information by which you may be personally identified, such as your email address, date of birth, location, photograph, ID photograph, and any other identifier by which you may be contacted or identified online or offline ("Personal Information"). This information includes:

---

[13] TEA, Terms Of Use, *available at:* https://www.teaforwomen.com/terms (last visited August 7, 2025).
[14] TEA, *Privacy Policy, available at:* https://www.teaforwomen.com/privacy (last visited August 7, 2025).
[15] *Id.*

12
CLASS ACTION COMPLAINT

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

- Information that you provide by filling in forms in the Services. This includes information provided at the time of registering to use the Services, using the Services and requesting help.

- Details of transactions you carry out through the Services and of the fulfillment of your orders. You may be required to provide financial information before placing an order through the Services or receiving payment.

- Records and copies of your correspondence (including e-mail addresses and phone numbers), if you contact us. We may also ask you for information when you report a problem with the Services.

- Your responses to surveys that we might ask you to complete for research and development purposes."[16]

62.    Tea also states it automatically collections other information about the user, such as: "Usage Details: When you access and use the Services, we may automatically collect certain details of your access to and use of the Services, including traffic data, location data, logs and other communication data and the resources that you access and use on or through the Services,…" and "[d]evice Information: We may collect information about your computer, mobile device and internet connection, including the computer or mobile device's unique device identifier, IP address, operating system, browser type, mobile network information and the device's telephone number."[17]

63.    Further, Tea promises to "retain personal information we collect from You where we have an ongoing legitimate business need to do so (for example, to provide you with a service you have requested or to comply with applicable legal, tax, or accounting requirements).  When we have no

---

[16] *Id.*
[17] *Id.*

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

ongoing legitimate business need to process personal information, we will either delete or anonymize it or, if this is not possible (for example, because personal information has been stored in backup archives), then we will securely store personal information and isolate it from any further processing until deletion is possible."[18]

64.    Tea states it uses and shares this Personal Information.  For example, Tea uses Personal Information, "[t]o personalize your user experience and to allow us to deliver the type of content and offerings in which you are most interested," "[t]o deliver service messages and other services and content you request and send information related to accounts and services, including confirmations, invoices, technical notices, updates, security alerts, and support and administrative messages, and to enable user-to user communication," and "[t]o conduct an aggregated analysis of the performance of our Services, including referral data if you arrive at our website from an external source.[19]

65.    Tea shares information with third parties under the following circumstances: "[w]e may share personal information for advertising or marketing purposes, "[w]e may share personal information when we do a business deal, or negotiate a business deal, involving the sale or transfer of all or a part of our business or assets," and "[w]e may share information with those who need it to do work for us."[20]

66.    By directly or indirectly collecting, processing, and storing Plaintiff' and Class members' Private Information, Tea assumed legal and equitable duties to protect such information. By its own repeated telling, Tea knew that it was responsible for protecting this Private Information from disclosure.

67.    What happened next was therefore both known and wholly foreseeable to Tea.

---

[18] *Id.*
[19] *Id.*
[20] *Id.*

CLASS ACTION COMPLAINT

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

**The Data Breach**

68.     On July 25, 2025, Defendant published a statement notifying Plaintiff and other victims of the Data Breach (the "Official Statement"),[21] informing them that:

> A legacy data storage system was compromised, resulting in unauthorized access to a dataset from prior to February 2024. This dataset includes approximately 72,000 images, including approximately 13,000 selfies and photo identification submitted by users during account verification and approximately 59,000 images publicly viewable in the app from posts, comments and direct messages.
>
> No email addresses or phone numbers were accessed. Only users who signed up before February 2024 were affected.

69.     Tea's Official Statement also noted: "We are currently working to determine the full nature and scope of information involved in the incident." And indicated that this is how the Data Breach occurred, "During our early stages of development some legacy content was not migrated into our new fortified system. An unauthorized actor accessed our identifier link where data was stored before February 24, 2024. As we grew our community, we migrated to a more robust and secure solution which has rendered that any new users from February 2024 until now were not connected to the images involved in this incident."[22]

70.     Later, Tea provided an update stating, "As part of our ongoing investigation, we have recently learned that some direct messages (DMs) were accessed as part of the initial incident."[23]

71.     Public reports indicate that the primary cause of the Data Breach was unsecured Firebase Storage.  That is, "[t]he breach occurred because Tea used an unsecured Firebase storage bucket to store sensitive user data. The problem was shockingly simple: Tea stored sensitive user data

---

[21]     TEA, *Update Regarding Cyber Security Incident*, *available at* https://www.teaforwomen.com/cyberincident, (last visited August 7, 2025).

[22] *Id.*

[23] *Id.*

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

in a cloud database without any authentication - no passwords, no encryption, just a publicly accessible storage bucket."[24]

72.    The original hacker noted that Tea's Firebase bucket was configured by default to be publicly accessible, lacking authentication. The bucket stored 72,000 images- 13,000 selfies and IDs, 59,000 from posts and messages – without encryption or password protection.[25]

73.    Then, users from 4chan (an anonymous imageboard website launched in 2003 where users can post text and images on various topic boards) discovered an exposed database hosted on Google's Firebase platform, and were able to access peoples' personal data and selfies, then post that data online. "4chan users initially posted the files, but even after the original thread was deleted, automated scripts kept scraping data. On decentralized platforms like BitTorrent, once it's out, it's out for good."[26]

74.    These facts reveal systemic failures to implement and maintain industry-standard data security systems.

75.    Tea's negligence and/or recklessness permitted the hackers to exfiltrate Private Information belonging to tens of thousands of women.

76.    On July 25, 2025, Tea notified impacted customers of the Data Breach via email.

77.    In its Official Statement, by assuring users that "no action" was needed and that "all data has been secured," Tea misled affected individuals into foregoing necessary precautions to mitigate

---

[24] Sheth, Nirali (July 25, 2025), "*Is the Tea app legal and who is the founder? Entire data breach controversy explained*," *available at*: https://www.primetimer.com/features/tea-app-legal-founder-entire-data-breach-controversy-explained (lat visited August 7, 2025).

[25] "72,000 Women's IDs Exposed: 'Safety' Tea App Brews a Security Nightmare," July 25, 2025, *available at*: https://www.btcc.com/en-US/square/decryptCO/693521 (last visited August 7, 2025).

[26]"*Tea App That Claimed to Protect Women Exposes 72,000 IDs in Epic Security Fail*," *available at* https://www.aicoin.com/en/article/474688 (last visited August 7, 2025).

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

identity theft and further harm. These omissions and misrepresentations further evidence Defendant's disregard for user privacy and constitute unlawful and deceptive conduct under California law.

78.     Omitted from the Official Statement were the identity of the cybercriminals who perpetrated this Data Breach, the details of the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these critical facts have not been explained or clarified to Plaintiff and Class Members, who retain a vested interest in ensuring that their Private Information remains protected.

79.     This "disclosure" amounts to no real disclosure at all, as it fails to inform, with any degree of specificity, Plaintiff and Class Members of the Data Breach's critical facts. Without these details, Plaintiff's and Class Members' ability to mitigate the harms resulting from the Data Breach is severely diminished.

80.     Defendant could have prevented this Data Breach by, among other things, properly encrypting or otherwise protecting their equipment and computer files containing Private Information.

**Plaintiff and Class Members' Private Information Has Value**

81.     The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[27] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employee-benefit management company or taxpayer identification number."[28]

---

[27]  17 C.F.R. § 248.201 (2013).
[28]  Id.

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

82.    Criminal actors highly value PHI and PII. Such information is continually traded on underground marketplaces, including on the dark web, a section of the internet that cannot be accessed through standard web browsers.

83.    The kind of information exposed in the Data Breach poses a significant risk to Plaintiff and Class Members; the information stolen here includes immutable personal data.

84.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

85.    The fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[29]

86.    Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

**Tea Was Obliged to Plaintiff and the Class to Keep Private Information Secure**

87.    Tea maintains and stores the Private Information of Plaintiff and the Class in the usual course of business.

---

[29]Report to Congressional Requesters, GAO, at 29 (June 2007), *available at:* https://www.gao.gov/assets/gao-07-737.pdf (last visited August 7, 2025).

18
CLASS ACTION COMPLAINT

88.     Under the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Tea was prohibited from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has determined that a company's failure to implement reasonable and appropriate data security measures to protect consumers' sensitive personal information constitutes an "unfair practice" in violation of the Act.[30]

89.     Tea is also required by various state laws and regulations to protect Plaintiff's and Class members' Private Information.

90.     In addition to its obligations under federal and state laws, Tea had a duty to Plaintiff and Class members whose Private Information Tea collected and stored. This duty required Tea to exercise reasonable care in acquiring, retaining, securing, safeguarding, deleting, and protecting that information from compromise, loss, theft, unauthorized access, or misuse. Tea owed Plaintiff and Class members an obligation to provide reasonable security measures, in line with industry standards and regulatory requirements, ensuring that its computer systems, networks, and personnel responsible for them adequately protected the Private Information of Plaintiff and Class members from unauthorized exposure.

91.     Tea owed a duty to Plaintiff and Class members to design, maintain, and regularly test its computer and email systems to ensure that the Private Information in its possession was adequately secured and protected from unauthorized access or compromise.

92.     Tea owed a duty to Plaintiff and Class members to establish and enforce reasonable data security practices and procedures to protect that information. This duty included properly training its employees and others with access to Private Information within its computer systems on how to securely handle and protect such data.

---

[30] *See generally FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

93.     Tea owed a duty to Plaintiff and Class members to maintain, update and otherwise ensure the security of Tea systems.

94.     Tea owed a duty to Plaintiff and Class members to implement processes capable of detecting, investigating and thwarting a breach in its data security systems in a timely manner.

95.     Tea owed a duty to Plaintiff and Class members to disclose if its computer systems and data security practices were inadequate to protect individuals' Private Information from theft. Such an inadequacy would constitute a material fact in the decision to provide personal information to Tea.

96.     Tea owed a duty to Plaintiff and Class members to promptly and accurately disclose any data breaches that occurred.

97.     Tea owed a duty of care to Plaintiff and Class members, as they were foreseeable and likely victims of any deficiencies in Tea's data security practices.

**The Data Breach Was Foreseeable and Preventable**

98.     Tea's approach to maintaining the privacy of Plaintiff's and Class members' Private Information was inadequate, unreasonable, negligent, and reckless.

99.      The Data Breach was clearly foreseeable to Tea. The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individuals, businesses, and government entities.

100.    The Data Breach was also clearly foreseeable to Tea because, as discussed *supra*, Tea was well aware that the Private Information it collects is highly sensitive and of significant value to those who would use it for wrongful purposes.

101.    Given that Tea took Private Information from Plaintiff and Class members, Tea should and could have taken reasonable measures to ensure that the Private Information generated and collected was safe from unauthorized actors.

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

102.    The Data Breach was the direct result of Tea's failure to implement reasonable measures to secure the Private Information with which it was entrusted.

**Tea Failed to Comply with FTC Guidelines**

103.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making.

104.    In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal consumer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[31]

105.    The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[32]

106.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

107.    These measures are, of course, largely similar to those recommended by Tea itself in its public postings on cybersecurity.

---

[31] *Protecting Personal Information: A Guide for Business*, U.S. FED. TRADE COMM'N (2016), *available at* https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business.
[32] *See id.*

21
CLASS ACTION COMPLAINT

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

108.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

109.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Tea, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Tea's duty in this regard.

110.    Tea failed to properly implement basic data security practices.

111.    Tea's failure to employ reasonable and appropriate measures to protect against unauthorized access to the Private Information of its customers or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

112.    Upon information and belief, Tea was at all times fully aware of its obligation to protect the Private Information, and of the significant repercussions that would result from its failure to do so. Accordingly, Tea's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

**Tea Failed to Comply with Industry Standards**

113.    Tea's cybersecurity practices and policies were inadequate, falling short of the industry-standard measures that should have been implemented long before the Breach occurred.

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

114.    Several best practices have been identified that, at a minimum, should be implemented by companies in possession of Private Information, like Tea, including but not limited to: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption, making data unreadable without a key; multifactor authentication; backup data and limiting which employees can access sensitive data. Tea failed to follow these industry best practices, including a failure to implement multifactor authentication.

115.    Other best cybersecurity practices that are standard for companies include installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches and routers; monitoring and protection of physical security systems; protection against any possible communication system; training staff regarding critical points.

116.    Tea failed to follow these cybersecurity best practices, including failure to train staff.

117.    Tea failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

118.    These foregoing frameworks are existing and applicable industry standards for companies, and upon information and belief, Tea failed to comply with at least one—or all—of these accepted standards, thereby opening the door to the threat actor and causing the Data Breach.

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

**Tea's Failures Caused Common Injuries**

119.    As a result of Tea's ineffective and inadequate data security practices, the Data Breach, and the foreseeable consequences of Private Information ending up in the possession of criminals, the risk of identity theft to the Plaintiff and Class members has materialized and is imminent, and Plaintiff and Class members have all sustained actual injuries and damages, including: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Tea's possession and is subject to further unauthorized disclosures so long as Tea fails to undertake appropriate and adequate measures to protect the data.

**Data Breaches Increase Victims' Risk of Identity Theft**

120.    The unencrypted Private Information of Plaintiff and Class members will end up for sale on the dark web as that is the modus operandi of hackers.

121.    Unencrypted Private Information may also fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiff and Class members. Simply put, unauthorized individuals can easily access the Private Information of Plaintiff and Class members.

122.    The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

123.    Plaintiff's and Class members' Private Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of ways for criminals to exploit Plaintiff and Class members and to profit off their misfortune.

**Loss of Time to Mitigate Risk of Identity Theft and Fraud**

124.    As a result of the recognized risk of identity theft, when a Data Breach occurs, and an individual is notified by a company that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm—yet, the resource and asset of time has been lost.

125.    Plaintiff and Class members have spent, and will spend additional time in the future, on a variety of prudent actions, such as researching and verifying the legitimacy of the Data Breach. Accordingly, the Data Breach has caused Plaintiff and Class members to suffer actual injury in the form of lost time—which cannot be recaptured—spent on mitigation activities.

126.    Plaintiff's mitigation efforts are also consistent with the steps that FTC recommends that data breach victims take several steps to protect their personal and financial information after a data breach, including.[33]

**Diminution of Value of Private Information**

127.    Private Information is valuable. Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that PII has considerable market value.

---

[33] *See* U.S. FED. TRADE COMM'N, *Identity Theft.gov*, https://www.identitytheft.gov/Steps (last visited August 7, 2025).

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

128.    As a result of the Data Breach, Plaintiff's and Class members' Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class members for their property, resulting in an economic loss. Moreover, the Private Information is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

129.    At all relevant times, Tea knew, or reasonably should have known, of the importance of safeguarding the Private Information of Plaintiff and Class members, and of the foreseeable consequences that would occur if Tea's data security system was breached, including, specifically, the significant costs that would be imposed on Plaintiff and Class members as a result of a breach.

**Future Costs of Credit and Identity Theft Monitoring Are Reasonable and Necessary**

130.    Given the type of targeted attack in this case, sophisticated criminal activity, and the type of Private Information involved, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes, including opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

131.    Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that their Private Information was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

132.    Consequently, Plaintiff and Class members are at an increased risk of fraud and identity theft for many years into the future.

133.    The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class member. This is reasonable and necessary cost to monitor to protect Plaintiff and Class members from the risk of identity theft that arose from Tea's Data Breach.

**Loss of the Benefit of the Bargain**

134.    Furthermore, Tea's poor data security practices deprived Plaintiff and Class members of the benefit of their bargain. When agreeing to pay Tea and/or its agents for educational services or agreeing to obtain employment at Tea or one of its customers, Plaintiff and other reasonable consumers understood and expected that they were, in part, paying for the product and/or service and necessary data security to protect their Private Information when, in fact, Tea did not provide the expected data security. Accordingly, Plaintiff and Class members received services or employment positions that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Tea.

## CLASS ACTION ALLEGATIONS

135.    Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of themself and the following Class, subject to amendment as appropriate:

**Nationwide Class**:

All individuals within the United States of America whose Private Information was exposed in the Data Breach experienced by Tea Dating Advice, Inc. announced on or about July 25, 2025, including all persons who were sent a notice of the Data Breach (the "Class").

136.    Plaintiff also seeks certification of a California Subclass, defined as follows and subject to amendment as appropriate:

**California Subclass**:

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

All individuals residing in the state of California whose Private Information was exposed in the Data Breach experienced by Tea Dating Advice, Inc. announced on or about July 25, 2025, including all persons who were sent a notice of the Data Breach (the "California Subclass").

137.    Plaintiff also seeks certification of a Subclass, defined as follows and subject to amendment as appropriate:

**Subclass:**

All persons residing in the United States whose driver's licenses were exposed in the Tea Dating Advice, Inc. data breach announced on or about July 25, 2025 (the "Subclass"; "California Subclass" and "Subclass" are collectively referred to herein as "Subclasses").

138.    Excluded from the Class and Subclasses are the following individuals and/or entities: Tea and Tea's parents, subsidiaries, affiliates, officers and directors, and any entity in which Tea has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

139.    Plaintiff reserves the right to amend the above definitions or to propose additional subclasses in subsequent pleadings and motions for class certification.

140.    This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is readily ascertainable.

141.    <u>Numerosity</u>: A class action is the only available method for the fair and efficient adjudication of this controversy, as the members of the Class and Subclasses are so numerous that joinder of all members is impractical, if not impossible.

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

142.    Commonality: Plaintiff and members of the Class and Subclasses share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

      a.   Whether Tea had a legal duty to Plaintiff and the Class and Subclasses to exercise due care in collecting, storing, using, and/or safeguarding their Private Information;

      b.   Whether Tea knew or should have known the susceptibility of its data security systems to a data breach;

      c.   Whether Tea's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

      d.   Whether Tea's failure to implement adequate data security measures allowed the Data Breach to occur;

      e.   Whether Tea failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

      f.   Whether Tea adequately, promptly, and accurately informed Plaintiff and members of the Class and Subclasses that their Private Information had been compromised;

      g.   How and when Tea actually learned of the Data Breach;

      h.   Whether Tea's conduct, including their failure to act, resulted in or was the proximate cause of the breach of Tea's systems, resulting in the loss of the Private Information of Plaintiff and Class and Subclasses members;

CLASS ACTION COMPLAINT

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

i.  Whether Tea adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j.  Whether Tea engaged in unfair, unlawful, or deceptive practices by failing to safeguard the Private Information of Plaintiff and members of the Class and Subclasses;

k.  Whether Plaintiff and Class and Subclasses members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or accounting is/are appropriate as a result of Tea's wrongful conduct; and

l.  Whether Plaintiff and Class and Subclasses members are entitled to restitution as a result of Tea's wrongful conduct.

143.  <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class and Subclasses. Plaintiff and all members of the Class and Subclasses sustained damages arising out of and caused by Tea's common course of conduct in violation of law, as alleged herein.

144.  <u>Adequacy of Representation</u>: Plaintiff in this class action are adequate representatives of the Class and Subclasses in that the Plaintiff has the same interest in the litigation of this case as members of the Class and Subclasses, are committed to the vigorous prosecution of this case, and have retained competent counsel who are experienced in conducting litigation of this nature.

145.  Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class or Subclasses Members or the Class and Subclasses in their entirety. Plaintiff anticipates no management difficulties in this litigation.

146.  <u>Superiority of Class Action</u>: Because the damages suffered by individual Class and Subclasses members, although not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for members of the Class and

CLASS ACTION COMPLAINT

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

Subclasses to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought, by each individual member of the Class and Subclasses, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

147.    The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class and Subclasses members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

148.    This class action is also appropriate for certification because Tea has acted or refused to act on grounds generally applicable to Class and Subclasses members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class and Subclasses members and making final injunctive relief appropriate with respect to the Class and Subclasses in their entirety.

149.    Tea's policies and practices challenged herein apply to and affect Class and Subclasses members uniformly and Plaintiff's challenge of these policies and practices hinges on Tea's conduct with respect to the Class and Subclasses in their entirety, not on facts or law applicable only to Plaintiff.

150.    Unless Class-wide and Subclasses-wide injunctions are issued, Tea may continue failing to properly secure the Private Information of Class and Subclasses members, and Tea may continue to act unlawfully as set forth in this Complaint.

151.    Further, Tea has acted or refused to act on grounds generally applicable to the Class and Subclasses and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class and Subclasses members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

31
CLASS ACTION COMPLAINT

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

## CAUSES OF ACTION

### COUNT I
### Negligence
### *On Behalf of Plaintiff and the Nationwide Class*

152.    Plaintiff realleges and reincorporate every allegation set forth in the preceding paragraphs as though fully set forth herein.

153.    At all times herein relevant, Tea owed Plaintiff and Class members a duty of care, inter alia, to act with reasonable care to secure and safeguard their Private Information and to use commercially reasonable methods to do so. Tea took on this obligation upon accepting and storing the Private Information of Plaintiff and Class members in their computer systems and on their networks.

154.    Among these duties, Tea was expected:

    a.  to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in their possession;

    b.  to protect Plaintiff's and Class members' Private Information using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

    c.  to implement processes to detect the Data Breach quickly and to timely act on warnings about data breaches; and

    d.  to promptly notify Plaintiff and Class members of any data breach, security incident, or intrusion that affected or may have affected their Private Information.

155.    Tea knew that the Private Information was private and confidential and should be protected as private and confidential and, thus, Tea owed a duty of care not to subject Plaintiff and

CLASS ACTION COMPLAINT

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

Class members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

156.    Tea knew, or should have known, of the risks inherent in collecting and storing Private Information, the vulnerabilities of their data security systems, and the importance of adequate security.

157.    Tea knew about numerous, well-publicized data breaches.

158.    Tea knew, or should have known, that their data systems and networks did not adequately safeguard Plaintiff's and Class members' Private Information.

159.    Only Tea was in the position to ensure that its systems and protocols were sufficient to protect the Private Information that Plaintiff and Class members had entrusted to them.

160.    Tea breached its duties to Plaintiff and Class members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard their Private Information.

161.    Because Tea knew that a breach of its systems could damage thousands of individuals, including Plaintiff and Class members, Tea had a duty to adequately protect its data systems and the Private Information contained therein.

162.    Plaintiff's and Class members' willingness to entrust Tea with their Private Information was predicated on the understanding that Tea would take adequate security precautions.

163.    Moreover, only Tea had the ability to protect its systems and the Private Information stored on them from attack. Thus, Tea had a special relationship with Plaintiff and Class members.

164.    Tea also had independent duties under state and federal laws that required Tea to reasonably safeguard Plaintiff's and Class members' Private Information and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between Tea, Plaintiff, and/or the remaining Class members.

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

165.    Tea breached its general duty of care to Plaintiff and Class members in, but not necessarily limited to, the following ways:

  a. by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiff and Class members;

  b. by failing to timely and accurately disclose that Plaintiff and Class members' Private Information had been improperly acquired or accessed;

  c. by failing to adequately protect and safeguard the Private Information by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured Private Information;

  d. by failing to provide adequate supervision and oversight of the Private Information with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather Private Information of Plaintiff and Class members, misuse the Private Information and intentionally disclose it to others without consent;

  e. by failing to adequately train its employees not to store Private Information longer than absolutely necessary;

  f. by failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class members' Private Information;

  g. by failing to implement processes to detect data breaches, security incidents, or intrusions quickly; and

CLASS ACTION COMPLAINT

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

h.  by failing to encrypt Plaintiff' sand Class members' Private Information and monitor user behavior and activity in order to identify possible threats.

166.    Tea's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

167.    As a proximate and foreseeable result of Tea's grossly negligent conduct, Plaintiff and Class members have suffered damages and are at imminent risk of additional harm and damages.

168.    The law further imposes an affirmative duty on Tea to timely disclose the unauthorized access and theft of the Private Information to Plaintiff and Class members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences and thwart future misuse of their Private Information.

169.    Tea breached their duty to notify Plaintiff and Class Members of the unauthorized access by waiting weeks after learning of the Data Breach to provide direct notification to Plaintiff and Class members and then by failing and continuing to fail to provide Plaintiff and Class members sufficient information regarding the breach.

170.    124.    To date, Tea has not provided sufficient information to Plaintiff and Class members regarding the extent of unauthorized access and continue to breach its disclosure obligations to Plaintiff and Class members.

171.    Further, through Tea's failure to provide timely and clear notification of the Data Breach to Plaintiff and Class members, Tea prevented Plaintiff and Class members from taking meaningful, proactive steps to secure their Private Information.

172.    There is a close causal connection between Tea's failure to implement security measures to protect the Private Information of Plaintiff and Class members and the harm suffered, or risk of imminent harm suffered by Plaintiff and Class members.

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

173.    Plaintiff's and Class members' Private Information was accessed as the proximate result of Tea's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

174.    Tea's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

175.    The damages Plaintiff and Class members have suffered (as alleged above) and will suffer were and are the direct and proximate result of Tea's grossly negligent conduct.

176.    As a direct and proximate result of Tea's negligence, Plaintiff and Class members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to, efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft; (vi) the continued risk to their Private Information, which may remain in Tea's possession and is subject to further unauthorized disclosures so long as Tea fails to undertake appropriate and adequate measures to protect Plaintiff' and Class members' Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class members.

177.    As a direct and proximate result of Tea's negligence and negligence per se, Plaintiff and Class members have suffered and will continue to suffer other forms of injury and/or harm, including,

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

178.    Additionally, as a direct and proximate result of Tea's negligence, Plaintiff and Class members have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Tea's possession and are subject to further unauthorized disclosures so long as Tea fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

## COUNT II
### Negligence Per Se
### *On Behalf of Plaintiff and the Nationwide Class*

179.    Plaintiff realleges and incorporate by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

180.    Under the FTCA, 15 U.S.C. § 45, Tea had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiff's and Class members' Private Information.

181.    Tea violated Section 5 of the FTCA by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards as described in detail herein.

182.    Tea's conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of a data breach involving Private Information of its consumers.

183.    Plaintiff and Class members are consumers within the class of persons Section 5 of the FTCA was intended to protect.

184.    The harm that has occurred as a result of Tea's conduct is the type of harm that the FTCA was intended to guard against.

37
CLASS ACTION COMPLAINT

185.    As a direct and proximate result of Tea's negligence *per se*, Plaintiff and Class members have suffered and will continue to suffer injuries, including but not limited to those described herein.

### COUNT III
### Breach of Implied Contract
### *On Behalf of Plaintiff and the Nationwide Class*

186.    Plaintiff reallege and incorporate by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

187.    Through their course of conduct, Tea, Plaintiff and Class members entered into implied contracts for Tea to implement data security adequate to safeguard and protect the privacy of Plaintiff's and Class members' Private Information.

188.    Tea required Plaintiff and Class members to provide and entrust their Private Information as a condition of obtaining Tea's services.

189.    Tea solicited and invited Plaintiff and Class members to provide their Private Information as part of Tea's regular business practices.

190.    Plaintiff and Class members accepted Tea's offers and provided Tea with their Private Information

191.    In so doing, Plaintiff and Class members entered into implied contracts with Tea by which Tea agreed to safeguard and protect Private Information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and Class members if their data had been breached and compromised or stolen.

192.    A meeting of the minds occurred when Plaintiff and Class members agreed to, and did, provide their Private Information to Tea in exchange for, amongst other things, the protection of their Private Information.

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

193.    Plaintiff and Class members fully performed their obligations under the implied contracts with Tea.

194.    Tea breached their implied contracts with Plaintiff and Class members—and with their school district customers—by failing to safeguard and protect their Private Information and by failing to provide timely and accurate notice to them that their Private Information was compromised as a result of the Data Breach.

195.    As a direct and proximate result of Tea's above-described breach of implied contract, Plaintiff and Class members have suffered (and will continue to suffer) (a) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (b) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (c) loss of the confidentiality of the stolen confidential data; (d) the illegal sale of the compromised data on the dark web; (e) lost work time; and (f) other economic and non-economic harm.

## COUNT IV
### Violation of the Driver's Privacy Protection Act, 18 U.S.C. §§2724, et seq.
### (On Behalf of Plaintiff and All Class Members)

196.    Plaintiff reallege and incorporate by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

197.    The DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains . . . ." 18 U.S.C. § 2724.

198.    The DDPA also restricts the resale and redisclosure of personal information, and requires authorized recipients to maintain records of each individual and the permitted purpose of the disclosure for a period of five years. 18 U.S.C. § 2721(c).

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

199.    Under the DPPA, a "motor vehicle record" means any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1). Driver's license numbers are motor vehicle records and "personal information" under the DPPA. 18 U.S.C. § 2725(3).

200.    Pursuant to the allegations herein, Defendant knew or should have known that it obtained, disclosed or re-disclosed, and used PII from a motor vehicle record for a purpose not permitted under the DPPA.

201.    By engaging in the conduct described above, Defendant knowingly obtained personal information for a purpose not permitted under the DPPA.

202.    By engaging in the conduct described above, Defendant knowingly used personal information for a purpose not permitted under the DPPA.

203.    By engaging in the conduct described above, Defendant knowingly disclosed or re-disclosed personal information for a purpose not permitted under the DPPA.

204.    As a result of Defendant's acquisition, use, subsequent Data Breach, and violations of the DPPA, Plaintiff and putative Class Members are entitled to statutory damages to maximum allowable, actual damages, liquidated damages, and attorneys' fees and costs.

**COUNT V**
**Breach of Fiduciary Duty**
***On Behalf of Plaintiff and the Nationwide Class***

205.    Plaintiff realleges and incorporate by reference all allegations contained in the foregoing paragraphs as if fully set forth herein.

206.    Given the relationship between Tea and Plaintiff and Class members, where Tea became guardian of Plaintiff' and Class members' Private Information, Tea became a fiduciary by its undertaking and guardianship of the Private Information, to act primarily for Plaintiff and Class

40
CLASS ACTION COMPLAINT

members: (1) for the safeguarding of Plaintiff and Class members' Private Information; (2) to timely notify Plaintiff and Class members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information Tea stores.

207.    Tea has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of Tea's relationship with them—especially to secure their Private Information.

208.    Because of the highly sensitive nature of the Private Information, Plaintiff and Class members (or their third-party agents) would not have entrusted Tea, or anyone in Tea's position, to retain their Private Information had they known the reality of Tea's inadequate data security practices.

209.    Tea breached its fiduciary duties to Plaintiff and Class members by failing to sufficiently encrypt or otherwise protect their Private Information.

210.    Tea also breached its fiduciary duties to Plaintiff and Class members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

211.    As a direct and proximate result of Tea's breach of its fiduciary duties, Plaintiff and Class members have suffered and will continue to suffer numerous injuries, as detailed *supra*.

## COUNT VI
### Unjust Enrichment
### *On Behalf of Plaintiff and the Nationwide Class*

212.    Plaintiff reallege and reincorporate every allegation set forth in the preceding paragraphs as though fully set forth herein.

213.    By its wrongful acts and omissions described herein, Tea has obtained a benefit by unduly taking advantage of Plaintiff and Class members.

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

214.    Tea, prior to and at the time Plaintiff and Class members entrusted their Private Information to Tea, caused Plaintiff and Class members to reasonably believe that Tea would keep such Private Information secure.

215.    Tea was aware, or should have been aware, that reasonable customers would have wanted their Private Information kept secure and would not have contracted with Tea, directly or indirectly, had they known that Tea's information systems were sub-standard for that purpose.

216.    Tea was also aware that, if the substandard condition of and vulnerabilities in their information systems were disclosed, it would negatively affect Plaintiff', Class members', and other customers' decisions to seek services therefrom.

217.    Tea failed to disclose facts pertaining to their substandard information systems, defects, and vulnerabilities therein before Plaintiff, Class members, and other customers made their decisions to engage in commerce therewith and seek services or information.

218.    Instead, Tea suppressed and concealed such information. By concealing and suppressing that information, Tea denied Plaintiff, Class members, and customers the ability to make a rational and informed purchasing and servicing decision and took undue advantage of Plaintiff and Class members.

219.    Tea was unjustly enriched at the expense of Plaintiff and Class members, as Tea received profits, benefits, and compensation, in part, at the expense of Plaintiff and Class members; however, Plaintiff and Class members did not receive the benefit of their bargain because they paid for products and or services that did not satisfy the purposes for which they bought/sought them.

220.    Since Tea's profits, benefits, and other compensation were obtained improperly, Tea is not legally or equitably entitled to retain any of the benefits, compensation, or profits realized from these transactions.

CLASS ACTION COMPLAINT

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

221.    Plaintiff and Class members seek an Order of this Court requiring Tea to refund, disgorge, and pay as restitution any profits, benefits, and other compensation obtained by Tea from its wrongful conduct and/or the establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

## COUNT VII
### Invasion of Privacy
### *On Behalf of Plaintiff and the Nationwide Class*

222.    Plaintiff herein repeat, reallege and fully incorporate all allegations in all preceding paragraphs.

223.    Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential Private Information and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

224.    Tea owed a duty to its current and former users, including Plaintiff and the Class, to keep this information confidential.

225.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiff and Class members' Private Information is highly offensive to a reasonable person.

226.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiff and the Class (or their third-party agents) disclosed their sensitive and confidential information to Tea, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

227.    The Data Breach constitutes an intentional interference with Plaintiff' and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

228.    Tea acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

229.    Tea acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

230.    Acting with knowledge, Tea had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

231.    As a proximate result of Tea's acts and omissions, the Private Information of Plaintiff and Class members was stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and Class members to suffer damages, as detailed *supra*.

232.    And, on information and belief, Plaintiff' Private Information already been published—or will be published imminently—by cybercriminals on the Dark Web.

233.    Unless and until enjoined and restrained by order of this Court, Tea's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class as their Private Information is still maintained by Tea and thus remains subject to Tea's inadequate cybersecurity system and policies.

234.    Plaintiff and the Class have no adequate remedy at law for the injuries relating to Tea's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Tea's inability to safeguard Private Information belonging to Plaintiff and Class members.

235.    In addition to injunctive relief, Plaintiff, on behalf of themselves and the other Class members, also seeks compensatory damages for Tea's invasion of privacy, which includes the value of the privacy interest invaded by Tea, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

**COUNT VIII**

**Violations of the California Consumer Privacy Act, Cal. Civ. Code § 1798.150**
***On Behalf of Plaintiff and the California Sub-Class***

236.     Plaintiff herein repeat, reallege and fully incorporate all allegations in all preceding paragraphs.

237.     Plaintiff and Subclasses members are "consumer[s]" as that term is defined in Cal. Civ. Code. § 1798.140(g), because they are natural persons and California residents.

238.     Tea is a "business" as that term is defined in Cal. Civ. Code. § 1798.140(c) because it has annual gross revenues exceeding $25 million, and it buys, receives, sells, and shares personal information of 50,000 or more consumers, households, or devices.

239.     Plaintiff' and California Subclass members' Private Information is "nonencrypted and nonredacted personal information" consisting of SSNs, names, addresses and other sensitive medical and personal information. Cal. Civ. Code § 1798.150(a)(1). The Data Breach constitutes "an unauthorized access and exfiltration, theft, or disclosure" pursuant to Cal. Civ. Code § 1798.150(a)(1) because due to Tea's failure to implement reasonable and necessary security measures, they enabled third party criminals to access personal information and thus, caused unauthorized sharing of Plaintiff' and California Subclass members' Private Information.

240.     Tea had a duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the Plaintiff' and California Subclass members' Private Information to protect said information.

241.     Tea breached the duty they owed to Plaintiff and California Subclass members as described above. Tea breached these duties by, among other things, failing to: (a) exercise reasonable care and implement adequate security systems, protocols and practices sufficient to protect the Private

**SEEGER WEISS LLP**
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

Information of Plaintiff and California Subclass members; (b) detect the Data Breach while it was ongoing; and (c) maintain security systems consistent with industry standards.

242.    Tea's breach of the duty they owed to Plaintiff and the California Subclass described above was the direct and proximate cause of the Data Breach. As a result, the Plaintiff and California Subclass members suffered damages, as described above and as will be proven at trial.

243.    Plaintiff and California Subclass members seek injunctive relief in the form of an order enjoining Tea from continuing the practices that constituted their breach of the duty owed to Plaintiff and California Subclass members as described above.

## COUNT IX
### Violations of the California Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56 *et seq.*
### *On Behalf of Plaintiff and the California Sub-Class*

244.    Plaintiff re-allege and incorporate by reference all preceding allegations, as if fully set forth herein.

245.    Tea is subject to the requirements and mandates of the California Confidentiality of Medical Information Act, Cal. Civ. Code §§ 56 *et seq.* ("CMIA").

246.    Cal. Civ. Code § 56.36 allows an individual to bring an action against a "person or entity who has negligently released confidential information or records concerning him or her in violation of this part."

247.    As a direct result of their negligent failure to adequately protect Plaintiff' and California Subclass members' Private Information, Tea allowed for a data breach which released and actually exposed that Private Information to criminals and/or unauthorized third parties.

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

248.    The CMIA defines "medical information" as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care . . . regarding a patient's medical history, mental or physical condition, or treatment."

249.    The CMIA defines individually identifiable information as "medical information [that] includes or contains any element of personal identifying information sufficient to allow identification of the individual, such as the [customers'] name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the individual's identity." Cal. Civ. Code § 56.050.

250.    Tea is in possession of affected individuals' sensitive medical and other information. Further, the compromised data was individually identifiable because it was accompanied by elements sufficient to allow identification of the Plaintiff by the third parties to whom the data was disclosed.

251.    Tea lawfully came into possession of the Plaintiff' and California Subclass members' medical information and had a duty pursuant to Section 56.06 and 56.101 of the CMIA to maintain, store and dispose of the Plaintiff' and California Subclass members' medical records in a manner that preserved their confidentiality. Sections 56.06 and 56.101 of the CMIA prohibit the negligent creation, maintenance, preservation, store, abandonment, destruction, or disposal of confidential medical information. Tea further violated the CMIA by failing to use reasonable care, and in fact, negligently maintained the Plaintiff' and Subclasses members' medical information.

252.    As a direct and proximate result of Tea's violations of the CMIA, Plaintiff and California Subclass members have been injured and are entitled to compensatory damages, punitive damages, and nominal damages of $1,000 for each of Tea's violations of the CMIA, as well as attorneys' fees and costs pursuant to Cal. Civ. Code § 56.36.

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

**COUNT X**

**Violations of the California Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200 *et seq.***
***On Behalf of Plaintiff and the California Sub-Class***

253.    Plaintiff re-allege and incorporate by reference all preceding allegations, as if fully set forth herein.

254.    Tea is a "person" defined by Cal. Bus. & Prof. Code § 17201.

255.    Tea violated Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

256.    Tea's "unfair" acts and practices include:

    a.  by utilizing cheaper, ineffective security measures and diverting those funds to its own profit, instead of providing a reasonable level of security that would have prevented the Data Breach;

    b.  failing to follow industry standard and the applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data and multi-factor authentication;

    c.  failing to timely and adequately notify Plaintiff and California Subclass members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages;

    d.  omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff' and California Subclass members' Private Information; and

    e.  omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff' and California Subclass members' Private Information.

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

257.      Tea has engaged in "unlawful" business practices by violating multiple laws, including the FTCA, 15 U.S.C. § 45, the California Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq.*, the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56 *et seq.*, and California common law.

258.      Tea's unlawful, unfair, and deceptive acts and practices include:

  a.  failing to implement and maintain reasonable security and privacy measures to protect Plaintiff' and California Subclass members' Prive Information, which was a direct and proximate cause of the Data Breach;

  b.  failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, which was a direct and proximate cause of the Data Breach;

  c.  failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff' and California Subclass members' Private Information, including duties imposed by the FTCA, 15 U.S.C. § 45, the California Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq.*, and the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56 *et seq.*, which was a direct and proximate cause of the Data Breach;

  d.  misrepresenting that it would protect the privacy and confidentiality of Plaintiff' and California Subclass members' Private Information, including by implementing and maintaining reasonable security measures; and

  e.  misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff' and California Subclass members' Private Information, including duties imposed by the FTCA, 15

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

U.S.C. § 45, the California Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq.*, and the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56 *et seq.*

259.    Tea's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Tea's data security and ability to protect the confidentiality of consumers' personal information.

260.    As a direct and proximate result of Tea's unfair, unlawful, and fraudulent acts and practices, Plaintiff and California Subclass members were injured and lost money or property, which would not have occurred but for the unfair and deceptive acts, practices, and omissions alleged herein, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their personal information.

261.    Tea's violations were, and are, willful, deceptive, unfair, and unconscionable.

262.    Plaintiff and California Subclass members have lost money and property as a result of Tea's conduct in violation of the UCL, as stated herein and above.

263.    By deceptively storing, collecting, and disclosing their Private Information, Tea has taken money or property from Plaintiff and California Subclass members.

264.    Tea acted intentionally, knowingly, and maliciously to violate the UCL, and recklessly disregarded Plaintiff' and California Subclass members' rights.

265.    Plaintiff and California Subclass members seek all monetary and nonmonetary relief allowed by law, including restitution of all profits stemming from Tea's unfair, unlawful, and fraudulent business practices or use of their personal information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief, including public injunctive relief.

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

## COUNT XI
### Declaratory Judgment and Injunctive Relief
#### *On Behalf of Plaintiff and the Nationwide Class*

266.    Plaintiff restate and reallege all preceding allegations above as if fully set forth herein.

267.    Plaintiff bring this claim individually and on behalf of the Class.

268.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as those here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

269.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiff' and Class members' Private Information and whether Tea is currently maintaining data security measures adequate to protect Plaintiff and Class members from further data breaches that compromise their Private Information. Plaintiff allege that Tea's data security measures remain inadequate. Furthermore, Plaintiff continue to suffer injury as a result of the compromise of their Private Information and remain at imminent risk that further compromises of their Private Information will occur in the future.

270.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.    Tea owes a legal duty to secure users' Private Information and to timely notify both customers and end users of a data breach under the common law, Section 5 of the FTCA, and various state statutes; and

b.    Tea continues to breach this legal duty by failing to employ reasonable measures to secure customer Private Information.

51
CLASS ACTION COMPLAINT

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

271.    This Court also should issue corresponding prospective injunctive relief requiring Tea to employ adequate security protocols consistent with law and industry standards to protect customers' and end users' Private Information.

272.    If an injunction is not issued, Plaintiff will suffer irreparable injury, and lack an adequate legal remedy in the event of another data breach of Tea's network.

273.    The risk of another such breach is real, immediate and substantial.

274.    If another breach of Tea's databases occurs, Plaintiff will not have an adequate remedy at law because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

275.    The hardship to Plaintiff if an injunction is not issued exceeds the hardship to Tea if an injunction is issued. Plaintiff will likely be subjected to substantial identity theft and other damages. On the other hand, the cost to Tea of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Tea has a pre-existing legal obligation to employ such measures.

276.    Issuance of the requested injunction will not disserve the public interest. Instead, such an injunction would benefit the public by preventing another data breach of Tea's network, thus eliminating the additional injuries that would result to Plaintiff and Class members whose Private Information would be further compromised.

## REQUEST FOR RELIEF

Wherefore, Plaintiff, individually and on behalf of members of the Class and Subclasses, respectfully requests that the Court enter judgment in their favor and for the following specific relief against Tea as follows:

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

1.      That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed Class and Subclasses under Fed. R. Civ. P. 23(b)(1), (b)(2), and/or (b)(3), including the appointment of Plaintiff' counsel as Class Counsel;

2.      For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

3.      That the Court enjoin Tea, ordering them to cease from unlawful activities;

4.      For equitable relief enjoining Tea from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff' and Class members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class members;

5.      For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class members, including but not limited to an Order:

    a.   Prohibiting Tea from engaging in the wrongful and unlawful acts described herein;

    b.   Requiring Tea to protect, including through encryption and multi-factor authentication, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state, and/or local laws;

    c.   Requiring Tea to delete and purge the Private Information of Plaintiff and Class members unless Tea can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class members;

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

d.  Requiring Tea to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiff' and Class members' Private Information;

e.  Requiring Tea to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Tea's systems periodically;

f.  Prohibiting Tea from maintaining Plaintiff' and Class members' Private Information on a cloud-based database;

g.  Requiring Tea to segment data by creating firewalls and access controls so that, if one area of Tea's network is compromised, hackers cannot gain access to other portions of its systems;

h.  Requiring Tea to conduct regular database scanning and securing checks;

i.  Requiring Tea to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling PII and PHI, as well as protecting the Private Information of Plaintiff and Class members;

j.  Requiring Tea to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Tea's policies, programs, and systems for protecting personal identifying information;

k.  Requiring Tea to implement, maintain, review, and revise as necessary a threat management program to monitor its networks for internal and external threats

CLASS ACTION COMPLAINT

SEEGER WEISS LLP
55 Challenger Road
Suite 600
Ridgefield Park, NJ 07660
T: 973-639-9100

appropriately, and assess whether monitoring tools are properly configured, tested, and updated; and

l.    Requiring Tea to meaningfully educate all Class members about the threats they face due to the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

6.    For prejudgment interest on all amounts awarded, at the prevailing legal rate;

7.    For an award of attorneys' fees, costs, and litigation expenses, as allowed by law; and

8.    For all other Orders, findings, and determinations sought in this Complaint.

## JURY DEMAND

277.    Plaintiff, individually and on behalf of the Class, hereby demand a trial by jury for all claims so triable.

Dated: August 8, 2025              Respectfully Submitted,

*/s/ Chris Seeger*

Christopher A. Seeger*
SEEGER WEISS LLP
55 Challenger Road, Suite 600
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
Facsimile: (973) 639-9393
Email: cseeger@seegerweiss.com

Shauna Itri (SBN 345536)
SEEGER WEISS LLP
325 Chestnut St., Suite 917
Philadelphia, PA 19106
Telephone: (215) 564-2300
Facsimile: (215) 851-8029
Email: sitri@seegerweiss.com

*Counsel for Plaintiff and the Proposed Class*

**pro hac vice forthcoming*